

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 10, 2020

**By ECF and Email**

Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Victor Alvarez*, No. 93 Cr. 181 (LGS)

Dear Judge Schofield:

      I write to respectfully request that the Court modify the conditions of the defendant's supervised release set forth in the Court's March 3, 2020 amended judgment. (Dkt. 1158).

**I.    Background**

      In 1993, the defendant conspired to wage a war of urban terrorism against the United States by bombing buildings, bridges, and tunnels in New York City. (Dkt. 1156 (attached hereto as Exhibit A) at 39).[1] The defendant, among other activities, looked for stolen cars to house bombs, provided coconspirators with a semi-automatic Uzi rifle, and participated in stirring diesel fuel and fertilizer to make a bomb. (*Id.* at 24, 39).

      The defendant was convicted after a jury trial in 1995 of seditious conspiracy, in violation of 18 U.S.C. § 2384 (Count One); bombing conspiracy, in violation of 18 U.S.C. § 371 (Count Five); attempted bombing, in violation of 18 U.S.C. §§ 844(i) and 2 (Count Six); interstate transportation of a firearm, in violation of 18 U.S.C. §§ 924(b) and 2 (Count Fifteen); and using and carrying a firearm in commission of a violent offense, in violation of 18 U.S.C. §§ 924(c) and 2 (Count Sixteen). (Dkt. 518). In 1996, the defendant was sentenced to 35 years' imprisonment to be followed by 3 years' supervised release. (*Id.*).

      In light of *United States v. Davis*, 139 S. Ct. 2319 (2019), on March 3, 2020, the Court vacated the January 17, 1996 judgment (Dkt. 518), and vacated the defendant's Count Sixteen conviction and the corresponding sentence. (Dkt. 1157). In an amended judgment issued the same day, the Court sentenced the defendant to 30 years' imprisonment to be followed by 3 years'

---

[1] The Government respectfully requests that Exhibit A be filed under seal. The document at docket entry 1156 is the Supplemental Presentence Report, which is not publicly available. Citations to Exhibit A are to the ECF page numbers in the document's header.

supervised release. (Dkt. 1158 at 3-4). The defendant is scheduled to be released from prison, and his supervised release is scheduled to begin, on July 30, 2020. (Federal Bureau of Prisons (the "BOP") Apr. 17, 2020 Summary Reentry Plan (attached hereto as Exhibit B)).[2]

## II.     Legal Standard

Pursuant to the supervised release statute:

> The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)[,] . . . modify . . . the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision . . . .

18 U.S.C. § 3583(e)(2). Rule 32.1(c)(1) requires that "[b]efore modifying the conditions of probation or supervised release, the court must hold a hearing, at which the person has the right to counsel and an opportunity to make a statement and present any information in mitigation."

For their part, "the provisions applicable to the initial setting of the terms and conditions of post-release supervision" provide:

> The court may order, as a . . . condition of supervised release, to the extent that such condition—
> (1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);
> (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and
> (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a);
> any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate . . . .

18 U.S.C. § 3583(d).

In turn, the "discretionary condition[s] of probation in section 3563(b)" include, among others, conditions that the defendant "undergo available medical, psychiatric, or psychological treatment, . . . as specified by the court, and remain in a specified institution if required for that purpose," and "reside at . . . a community corrections facility . . . for all or part of the term of probation." 18 U.S.C. § 3563(b)(9), (11).

---

[2] The Government respectfully requests that Exhibit B be filed under seal and that the Court accept the redacted portions of this submission, which refer to material from Exhibit B. The BOP's Summary Reentry Plan is a nonpublic document that contains sensitive information regarding, among other things, the defendant's health.

In sum, "a court 'may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release' after considering certain sentencing factors outlined in 18 U.S.C. § 3553(a)." *United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016) (citing § 3583(e)(2)). "So long as the court, when modifying supervised release conditions, considers the relevant 18 U.S.C. § 3553(a) sentencing factors, there is no additional requirement that it make a finding of new or changed circumstances with respect to the defendant." *Id.*; *see also id.* at 349 (rejecting challenge to Rule 32.1(c) modification hearing where "[t]he district court heard arguments from Parisi's counsel and the government on the merits of Parisi's objections, and received additional briefing from the parties on its authority to order the proposed modifications").

## III. Discussion

The Government respectfully requests that the Court modify the conditions of the defendant's supervised release by adding these conditions:

1. The defendant must participate in a Risk Assessment and Mental Health Evaluation approved by the U.S. Probation Office ("Probation"). As part of this process, the defendant must participate in polygraph or similar deception tests as directed by Probation. In addition, the defendant must continue to take any prescribed medications unless otherwise instructed by the healthcare provider. The defendant must contribute to the cost of services rendered based on his ability to pay and the availability of third-party payments. The Court authorizes the release of available psychological and psychiatric evaluations and reports, including the Presentence Investigation Report, to and from any healthcare provider concerning the defendant. (The "Mental Health Condition.")

2. The defendant must reside in a Residential Reentry Center for a period up to 12 months, during which time the defendant must not be permitted to leave the facility except for work, healthcare appointments, religious observances, or other acceptable reasons as approved by Probation. The defendant must abide by all the rules and regulations of the Residential Reentry Center, which shall include a subsistence payment to the facility based upon income earned. (The "Residential Reentry Center Condition.")

3. The defendant must be monitored by active GPS monitoring for a period of 12 months, including any period during which the defendant is residing in a Residential Reentry Center pursuant to the Residential Reentry Center Condition, and must abide by all technology requirements. The defendant must pay all or part of the costs of participation in the location monitoring program as directed by the Court and Probation. The selected form of location monitoring technology must be utilized to monitor the following restrictions on the defendant's movement in the community as well as other Court-imposed conditions of release: The defendant is restricted to his residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; Court appearances; Court-ordered obligations; or other activities as preapproved by Probation. (The "Home Confinement with GPS Condition.")

4. The defendant must possess or have access to, as arranged by Probation, a telephone that will allow videoconferencing with Probation. (The "Videoconferencing Condition.")

5. The defendant shall participate in a deradicalization program under the supervision of Probation. (The "Deradicalization Condition.")

6. The defendant must submit his person, residence, place of business, vehicle, and any property or computers (as defined in 18 U.S.C. § 1030(e)(1)), electronic communications, data storage devices and/or other media under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of release may be found. The search must be conducted at a reasonable time and in reasonable manner. Failure to submit to a search may be grounds for revocation. The defendant shall inform any other residents that the premises may be subject to search pursuant to this condition. (The "Search Condition," and, collectively, the "Proposed Conditions.")

The Proposed Conditions are "reasonably related to" "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. §§ 3553(a)(1), 3583(d)(1). Indeed, the "history and characteristics" of this defendant and the "nature and circumstances" of his offenses strongly counsel in favor of the Proposed Conditions.

The defendant's documented mental health issues, when not effectively treated, have contributed to the defendant's radicalization and violent behavior. *See, e.g.*, *United States v. Rahman*, 189 F.3d 88, 143 n.19 (2d Cir. 1999) ("With somebody like Mr. Alvarez, and anybody with . . . psychological difficulties[,] . . . [o]ver a period of time, you are going to see mental confusion [that] would just, if anything, compound the overall cognitive function, would make it worse." (internal quotation marks omitted)). These issues continued to contribute to violent and disruptive behavior when the defendant was incarcerated. Between 1993 and 2013, the defendant received 155 prison disciplinary reports, including for assaulting, spitting on, and threatening officers, possessing a weapon, flooding his cell, and keeping containers of urine and rotten milk in his cell. (Ex. A at 53-97). The defendant's mental health issues have contributed to erratic behavior directed at personnel outside of prison as well. (*See, e.g.*, Dkt. 1042 (2013 order noting that, "[d]espite multiple orders instructing [him] to cease correspondence with the Court regarding this case, . . . . in the past four months, Chambers has received no fewer than five letter requests, all of which are difficult to comprehend"); Dkt. 1035 (2012 order attaching a letter from the defendant, noting that the "Court previously directed the defendant to cease corresponding with Chambers," and ordering that "[t]he defendant is again directed to cease and desist any and all correspondence with Chambers"); Dkt. 1004 (2009 order attaching letters from the defendant, noting that the "Court has received no less than five [such] letter requests . . . from the defendant in the last three months" and "the United States Attorney's Office . . . has received correspondence directly from the defendant," and directing the defendant "to cease corresponding with chambers or the United States Attorney's Office")).

According to Probation, which has consulted with the BOP, sometime around 2013, the defendant started to be involuntarily medicated to treat his mental illness. Since around that time, he has received no prison disciplinary reports. (*See* Ex. A at 53). The treatment appears to have been helpful to some extent, but these efforts by BOP have not eliminated all of the defendant's at-times erratic behavior. (*See, e.g.*, Dkt. 1154 (2020 order noting that the defendant "filed two letters" and "it is unclear from the letters what requests [he] is making, if any, beyond a request for a copy of the docket sheet"); Dkt. 1146 (2019 order noting that the defendant filed a letter and

4

that, "[o]ther than the request for a copy of the docket sheet, the Court is unable to decipher what else, if anything, [he] is requesting"); Dkt. 1085 (2018 order denying the defendant's request "to set petitioner free base[d] on the c-span-gov. television cha[n]nel were on year 2005-until-2014- the Government M16 Intelligent as did ask for my freedom, I demand that you check with the t.v. chanel c-span for an check up and CIA GI Wilson Hernand"); Dkt. 1083 (2018 order denying the defendant's request "to set free petitioner" for reasons related to "M16" and "C-SPAN"); Dkt. 1075 (2017 order directing the defendant's counsel to file a letter "clarifying [the defendant's] [multiple] submissions on the criminal docket")). In fact, the BOP reports that "███████████ ███████████████████████████████████████████████████████████████████████████████████." (Ex. B at 6). For example, the BOP reports that the defendant "█████████████████ █████████████████████████████████████████." (*Id.*). He also apparently "███████████████████████████████████████████████████████████████████████████████████ ████████████████████████████." (*Id.*).

The BOP reports that the defendant "████████████████████████████████ ████████." (*Id.*). Troublingly, however, the BOP predicts that the defendant ██████ █████████████████████████████████████████████████████████████████████████." (*Id.*). Indeed, Probation reports that the defendant has told prison doctors that he does not intend to continue taking psychiatric medication upon his release from prison. Relatedly, the defendant has apparently recently asked for permission from the BOP to contact his codefendants. Compounding the likelihood that the defendant will not take the measures needed to treat his mental illness, the BOP reports that the defendant has "no address" in New York City, and will be "homeless" upon his return to this district. (*Id.* at 1).

In short, the defendant's history and characteristics show that failure to provide assistance in treating his mental health issues has and will continue to pose significant risks to the safety and wellbeing of the defendant and other members of the public. That is why the Mental Health Condition "involves no greater deprivation of liberty than is reasonably necessary" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and "to provide the defendant with needed . . . medical care . . . in the most effective manner." 18 U.S.C. §§ 3553(a)(2)(B)-(D), 3583(d)(2). Conditions intended to address defendants' mental health issues are common, including in terrorism cases. *See, e.g.*, *United States v. Rahimi*, 16 Cr. 760 (RMB), Dkt. 199 at 6 (S.D.N.Y. Feb. 13, 2018).

Most of the other Proposed Conditions support the Mental Health Condition. Specifically, the Residential Reentry Center Condition, the Home Confinement with GPS Condition, and the Videoconferencing Condition are all intended to ensure that the defendant has access to and remains in a stable environment conducive to ensuring that the defendant takes the steps required by the Mental Health Condition. Courts often impose conditions such as those. *See, e.g.*, *United States v. Molina*, 04 Cr. 989 (RMB), Dkt. 67 at 1-2 (S.D.N.Y. Nov. 8, 2018); *United States v. Ramirez*, 11 Cr. 1015 (LTS), Dkt. 165 at 1 (S.D.N.Y. Apr. 25, 2017). Similarly, the Deradicalization Condition is a necessary supplement to the Mental Health Condition to ensure that the defendant's mental illness does not once again lead him to the point where he is willing to

embrace radical, violent action. *See, e.g.*, *United States v. Alimehmeti*, 16 Cr. 398 (PAE), Dkt. 135 at 5 (S.D.N.Y. Dec. 19, 2019).[3]

The remaining Proposed Condition—the Search Condition—is relatively common in terrorism cases like this one. *See, e.g.*, *id.* Indeed, had the defendant been sentenced last year as opposed to in 1996, that condition would almost undoubtedly have been imposed as a matter of course.

With respect to procedure, the defendant has informed Probation via the BOP that he does not consent to the addition of the Proposed Conditions. As such, it appears that some form of hearing pursuant to Rule 32.1(c) will be necessary. Martin Cohen of the Federal Defenders represented the defendant for his *Davis* claim, and has advised that the Federal Defenders are conflicted from further representing the defendant. Accordingly, the defendant will need to be appointed counsel for the hearing on modifying the conditions of his supervised release. Given the danger to the community that the defendant poses if he is not receiving mental health treatment, the Government respectfully requests that the Court schedule a hearing for as soon as practicable. Because of the ongoing COVID-19 pandemic, the Government respectfully requests that the hearing occur by videoconference or teleconference. Such a remote hearing could occur while the defendant is still incarcerated. If the hearing is not scheduled to occur prior to the defendant's anticipated July 30, 2020 release date, the Government respectfully requests that the Court schedule the hearing to take place as soon as possible upon the defendant's arrival in this District in order to mitigate risks arising from the defendant's release in the absence of the Proposed Conditions.[4]

---

[3] In *Alimehmeti*, Judge Engelmayer imposed the Deradicalization Condition at the request of defense counsel, who anticipated that the proposal would involve "strict" and "lengthy" supervision, including restrictions on Internet access, "regular reporting," location monitoring, and "a safety cocoon that had triggers so that if the individual moved in any of the wrong directions, there would be a stopgap that would let the probation department or whoever was supervising him know that he was moving in the wrong direction." *Alimehmeti*, 16 Cr. 398 (PAE), Dkt. 133 at 51, 69 (S.D.N.Y. Dec. 16, 2019). In a written submission, counsel urged an "intervention process that replaces extremist rhetoric with alternative narratives, and one that promotes the development of critical thinking skills over ideology" similar to the Disruption and Early Engagement Program (DEEP) used by the Department of Justice, where appropriate, for a variety of offenders. *Id.* Dkt. 127 at 8, 47 (S.D.N.Y. Nov. 21, 2019); *see also, e.g.*, https://www.justice.gov/usao-sdil/pr/attorney-general-announces-launch-project-guardian-nationwide-strategic-plan-reduce-gun; https://www.dhs.gov/sites/default/files/publications/20_0210_dhs-tvtp-omb-fact-sheet.pdf at 2-3. In imposing the Deradicalization Condition, Judge Engelmayer committed substantial discretion to Probation regarding how to implement the condition. *See Alimehmeti*, 16 Cr. 398 (PAE), Dkt. 133 at 70 (S.D.N.Y. Dec. 16, 2019).

[4] In light of the defendant's mental health issues, the BOP plans to escort the defendant upon release from Georgia, where he is incarcerated, to this District. In the event that the Proposed Conditions are not in place when the defendant arrives in this District, the BOP plans to bring the defendant to the Bellevue Men's Shelter in this District. In that case, the defendant's Probation Officer would plan to meet the defendant at the Bellevue Men's Shelter so that the Probation

**IV.  Conclusion**

       For the foregoing reasons, the Government respectfully requests that the Court hold a hearing pursuant to Rule 32.1(c) and modify the conditions of the defendant's supervised release by adding the Proposed Conditions.  Probation, per U.S. Probation Officer Michael P. Nicholson, concurs with the requests set forth in this letter.

                                          Respectfully submitted,

                                          AUDREY STRAUSS
                                          Acting United States Attorney

                               By:     */s/ Samuel P. Rothschild*
                                          Samuel P. Rothschild
                                          Assistant United States Attorney
                                          (212) 637-2504

cc:  Victor Alvarez (by mail)
      BOP Reg. No. 34848-054
      USP Atlanta
      U.S. Penitentiary
      PO Box 150160
      Atlanta, GA 30315

      Martin S. Cohen, Esq. (by ECF)

      U.S. Probation Officer Michael P. Nicholson (by email)

---

Officer can arrange for the defendant to come to the Probation Office in short order to commence the supervision process.