UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                        93 CR 181 (VSB)

VICTOR ALVAREZ,

                Defendant.
                                      Conference
------------------------------x

                                      New York, N.Y.
                                      July 30, 2020
                                      12:10 p.m.

Before:

                HON. VERNON S. BRODERICK,

                                      District Judge

                      APPEARANCES

AUDREY STRAUSS
      Acting United States Attorney for the
      Southern District of New York
BY:  SAMUEL PHILIP ROTHSCHILD
      Assistant United States Attorney

CARLA MARIE SANDERSON
      Attorney for Defendant


Also Present:
Shawnte Lorick, Michael Nicholson, and Courtney Cooke, U.S.
Probation

1        THE COURT:  If I could ask counsel to please identify

2   themselves for the record.

3        MR. ROTHSCHILD:  Good afternoon, your Honor.  Sam

4   Rothschild for the government.  I'm joined by U.S. Probation

5   Officer Courtney Cooke, as well as U.S. Probation Officer

6   Michael Nicholson, and supervising Probation Officer Shawnte

7   Lorick.

8        THE COURT:  Good morning.

9        MS. SANDERSON:  Good morning, your Honor.  Carla

10  Sanderson for Victor Alvarez who is present in the first row.

11       Would your Honor like Mr. Alvarez to come up to the

12  table?

13       THE COURT:  Sure.  I think that would be fine.  That

14  way, if there's a need for you to communicate -- I don't know

15  if the device is there for you to be able to communicate in

16  privacy.

17       MS. SANDERSON:  Thank you, your Honor.

18       THE COURT:  Good afternoon, Mr. Alvarez.

19       We're here for the purpose of the government's

20  application.

21       Let me first review for the parties the materials, not

22  all of the materials because there are quite a few materials

23  that I won't mention.  I'll just say that there are exhibits.

24       So I have the government's letter of July 10 with

25  various attachments.  I have a memo which was provided to me

1  under seal.  I have Ms. Sanderson's July 24 letter.  I have the

2  government's July 27 letter providing certain additional

3  records which again related to medical issues.  So they've been

4  filed under seal.  And I have the government's July 28 letter

5  with a revised proposal concerning supervised release terms.

6          Let me ask first the government:  Are there any other

7  materials -- I have the amended judgment as well.  When I get

8  access to the computer, I will have access to the prior

9  presentence report.

10          Are there any other documents I should have in

11  connection with today's appearance?

12          MR. ROTHSCHILD:  No, your Honor.

13          THE COURT:  Ms. Sanderson from the defense?

14          MS. SANDERSON:  No, your Honor.

15          THE COURT:  Thank you.

16          So let me ask where things currently stand.  I know

17  that the parties had been discussing various things concerning

18  the government's July 28 letter, which are the modifications

19  that the government was proposing.

20          Mr. Rothschild.

21          MR. ROTHSCHILD:  Yes, your Honor.  At this time the

22  proposed conditions as set forth in that July 28 letter

23  continue to be the conditions that the government seeks to add

24  to Mr. Alvarez's term of supervised release.

25          And my understanding -- although defense counsel can

1  speak -- is that those are all opposed at this time.

2          THE COURT:  All right.  Ms. Sanderson, let me hear

3  from you.  If it makes sense, you can take it in the order that

4  they appear.  I'll allow you to do whichever order you would

5  like.  Just let me know which number you're dealing with so

6  that I'll know where I should look.

7          MS. SANDERSON:  Thank you, your Honor.

8          I'll start with the first condition.  Mr. Alvarez does

9  object to mental health treatment, including medication.  He

10  understands that a mental health evaluation will likely be

11  ordered.  And if ordered, he intends to comply with that

12  evaluation.

13          I think with regard to this condition, the biggest

14  concern is the medication issue and the legal issues

15  surrounding it that would need to be briefed, if at some point

16  the Court would consider adding that as a condition to

17  supervised release.

18          I think an independent evaluation would also be

19  necessary at some point to determine whether medication

20  continues to be necessary, whether it's effective.  And that's

21  what I have to say about the first condition.

22          If the Court has further questions --

23          THE COURT:  Just a few.  I guess as I understand it,

24  am I correct that Mr. Alvarez has been receiving medication up

25  until this point?

1          MS. SANDERSON:  That's correct, your Honor.

2          THE COURT:  Again, I understand the government is no

3   longer seeking sort of forced medication.  But I do understand

4   the legal issues that you're referring to.

5          Is there an objection to having it as a condition?

6   Obviously Mr. Alvarez, should he chose not to take the

7   medication, that is something without an order he can do.

8          Let me just confirm.  Is that the government's

9   assessment?  Obviously it will be considered a violation, and

10  the government can then proceed however they see fit.

11         But I'll add it's more than just -- any violation

12  would have to be accompanied by I think a fair amount of legal

13  briefing because if Mr. Alvarez chooses not to voluntarily take

14  the medication, in order to compel that, there are various

15  legal issues and findings, and actually an evaluation I think

16  perhaps even by an independent physician would need to be made.

17         Let me ask Mr. Rothschild.  Do you disagree with what

18  I have just said?

19         MR. ROTHSCHILD:  No.  I do not, your Honor.

20         THE COURT:  Ms. Sanderson, I guess what I would say is

21  in terms of the first condition, that I would impose the

22  condition with the understanding it's not something that

23  Mr. Alvarez -- that Mr. Alvarez can be compelled to take the

24  medication.

25         I do understand that to date, he had been taking

1    medication.  But, again, my understanding is that was also

2    through an order that had previously been obtained by the

3    Bureau of Prisons.

4         So I'll include it as a condition with that

5    understanding.  And the understanding is that the government

6    can then proceed as it sees fit with regard to a violation and

7    any other applications that they have.  But I understand that

8    as a legal matter, Mr. Alvarez has the right, at least at this

9    stage, to object to that.

10        MS. SANDERSON:  Thank you, your Honor.

11        THE DEFENDANT:  I do have something about the

12   evaluation that we spoke about.  I'm mentally stable.

13        It's concerning me and my attorney spoke about before

14   we came into the courtroom section I'm mentally stable.  It's

15   mental health treatment against my own will.  It's a case

16   against the Bureau of Prisons being filed by federal attorney

17   Vivian Hernandez from the federal District of Puerto Rico.

18        THE COURT:  Mr. Alvarez, I understand -- and your

19   attorney mentioned -- that you're objecting to both the mental

20   health treatment and the medication.  It's my understanding

21   that with regard to --

22        I intend to impose that over the objection with the

23   understanding that if either of those things end up not

24   happening, in other words, you choose not to be subject,

25   although I understand that this is something that you had

1    discussed that you would agree to.  But if you decide not to

2    undergo the mental health treatment and you decide not to take

3    the medication, then we'll just move to the next steps.

4         I understand you believe you don't need to have any of

5    those things right now.  Your attorney has made that clear in

6    the communications with the government and that I received.

7         What I would say is the following:  With regard to the

8    mental health treatment at least, there are many defendants who

9    appear before me, as well as other judges in this courthouse,

10   who are asked to undergo mental health treatment or drug

11   treatment and the like.

12        Many of them like yourself think they don't really

13   need it, but it's something that assists in terms of the

14   probation department in terms of their supervision.

15        So I understand your objection.  I hope that you will

16   make use of the mental health treatment and actually go and use

17   the mental health treatment as well as the medication.

18        The medication I think is a different issue, and I

19   understand the objections to that.  But certainly with regard

20   to the treatment, it's my hope that you do choose to adhere to

21   that condition.

22        Ms. Sanderson.

23        MR. ROTHSCHILD:  Your Honor, if I may.  May I just

24   confer with Ms. Sanderson for a moment before we leave the

25   mental health condition?

1              THE COURT:  Absolutely.

2              MR. ROTHSCHILD:  Thank you very much, your Honor.

3              (Counsel conferred)

4              MR. ROTHSCHILD:  Thank you, your Honor.

5              THE COURT:  Ms. Sanderson.

6              MS. SANDERSON:  Yes, your Honor.  With regard to the

7    second condition, Mr. Alvarez will be heading to the Belleview

8    men's shelter this afternoon.  He does object to the condition

9    that at probation's discretion he would have to move into a

10   residential reentry center.

11             I think it's just premature to add that.  If there are

12   any issues with him at the shelter, we could revisit it at that

13   time.

14             THE COURT:  Okay.  I guess what I would say with

15   regard to that is the following:  Obviously there are a lot of

16   moving parts and a lot of process that needs to happen in order

17   to have a proceeding like this.

18             If in fact it turns out that the probation department

19   decides that Mr. Alvarez should enter a residential reentry

20   center, we can revisit it at that point.  But without the

21   condition, there's nothing to set that up.

22             in other words, as I understand it, it would be at the

23   discretion of the probation department, and it also is I would

24   say a backstop.  By that I mean I don't know, A, whether or not

25   when Mr. Alvarez goes -- I assume today -- to the shelter, what

1    their situation is and how crowded it is and whether or not

2    there's going to be space or whether or not at some point

3    Mr. Alvarez may be there and decide, I don't want to be here

4    any longer.

5            It will just obviate the need to come back to myself

6    or, more likely, Judge Schofield with regard to that.  The

7    parties obviously, when there's an objection, can submit each

8    of your positions.  And it will be teed up for Judge Schofield

9    to handle.

10           MS. SANDERSON:  Understood, your Honor.

11           THE COURT:  Okay.

12           MS. SANDERSON:  With regard to the third condition,

13   Mr. Alvarez objects that he should remain on full-time

14   confinement wherever he is, particularly if he is taking his

15   medication.  He indicated that he would rather take his

16   medication and not be on full-time confinement, if that becomes

17   the situation.

18           He hasn't had aggression while he takes medication.

19   And provided that he's taking medication, I don't see any

20   reason to place him on full-time confinement at any place.

21           That seems like a continuation of his punishment, and

22   he hasn't violated any condition at this point.  so I would ask

23   the Court not to impose full-time home confinement at the

24   shelter or at any RRC.

25           With regard to the GPS, Mr. Alvarez consents to

1    wearing a GPS.  And I think that would alleviate many of the

2    concerns that probation and the government have regarding his

3    whereabouts and any need for full-time confinement.

4            THE COURT:  So as I understand it, you're consenting

5    to the GPS but not the confinement.  I guess the question I

6    have -- and this is for Mr. Rothschild.

7            Am I correct that the confinement issue really relates

8    to if Mr. Alvarez is at a residential reentry center?

9            Am I reading that accurately?  In other words, I

10   understand there will be GPS.  But in terms of item 3, let me

11   hear from you just to make sure I'm reading this correctly.

12           MR. ROTHSCHILD:  Thank you, your Honor.

13           Yes.  I believe the home confinement relates to

14   anywhere he's living, regardless if it's an RRC or Belleview

15   men's shelter or anywhere else.  And I'll note that I think the

16   proposed condition as written accommodates defense's concerns

17   in that it's explicit within the condition that should he

18   adhere to the terms of supervision -- and I'm heartened to hear

19   that he is contemplating taking mental health medication --

20   that that would result in probation relaxing the strictures.

21           Again, this is another backstop measure where

22   probation has the discretion to approve activities that he

23   wants to leave his residence for.  And as he progresses,

24   probation may allow greater and greater latitude with respect

25   to that condition.

1          THE COURT:  Ms. Sanderson.

2          MS. SANDERSON:  Yes, your Honor.  I was going to

3    interject that the shelter does have in place rules and curfews

4    is my understanding.  With the GPS, I believe that would be the

5    necessary level of care and restriction, particularly if he is

6    taking his medication.

7          And I do have in the records from the BOP, due to

8    Mr. Alvarez's upcoming release date and his lack of aggression

9    on the unit, he was given more permission to move about in the

10    BOP system.

11          There is no indication that he is violent or

12    aggressive or a danger.  And I think having him have to seek

13    permission just to leave the shelter would set him up for

14    failure.

15          THE COURT:  Only if he doesn't seek permission.  I

16    guess what I would say is the following:  Some of the things

17    that you've mentioned are contingent upon an action by

18    Mr. Alvarez in the future.  That may or may not happen.  That's

19    whether he decides to continue to take medication, which he's

20    not under an order to do.

21          There have been indications in various paperwork I've

22    seen that -- and Mr. Alvarez I think has expressed that here,

23    his desire not to take the medication.  So there isn't an

24    agreement to take it.  There is, as I understand it, a

25    suggestion that he will take it if these other conditions are

1   changed.

2           Well, I'm not going to make that determination now.

3   I'm going to impose the conditions that are in item 3.  But

4   there's a list of things about three quarters of the way down

5   that indicate various exceptions.

6           If there are any other exceptions, Ms. Sanderson, that

7   you can think of now, I'm willing to hear about those and

8   possibly add those to that list.

9           Again, as I understand this condition, if Mr. Alvarez

10  contacts probation and let's them know that he is desirous of

11  leaving the shelter to go X, Y, or Z, the probation department

12  will consider that request.  You're right.  I think it does

13  require a certain amount of planning, but I think it's

14  necessary under Mr. Alvarez's circumstances.

15          MS. SANDERSON:  With regard to the condition number 4,

16  telephone allowed for video conferencing, it's my understanding

17  Mr. Alvarez is indigent and will not be able to afford any type

18  of smartphone.

19          So to the extent that probation provides it, he

20  certainly has no objection to maintaining that phone and

21  communicating with probation on it.

22          THE COURT:  Let me hear from the government with

23  regard to that.  In other words, I don't know what the process

24  is for someone who doesn't have the funds or wherewithal to

25  actually purchase a phone that has this capability.

1       So let me hear from Mr. Rothschild with regard to

2   that.

3           MR. ROTHSCHILD:  Thank you, your Honor.

4       I'm happy to let the probation department speak to the

5   specifics of how the phone would come into Mr. Alvarez's

6   possession, but I would just note that the condition as written

7   contemplates that this would be at probation's arrangement.  So

8   it's not as if Mr. Alvarez is in violation of the condition

9   simply because he cannot afford a smartphone.

10          THE COURT:  All right.

11          THE COURT REPORTER:  Thank you, your Honor.

12      Regarding that condition, we do have funds that we can

13  purchase a minute phone.  I believe phones like that you just

14  need to place minutes on monthly.  I'm going to be seeing

15  Mr. Alvarez pretty frequently.  So that's something we would

16  take care of when I do see him on a regular basis.

17          THE COURT:  Officer, will that phone have video

18  conferencing capability?

19          THE COURT REPORTER:  That I'm not sure.  We can

20  definitely explore the type of phones that are available for

21  him.  But I believe that some of the phones that you can add

22  minutes to have the capability of being able to have video

23  conferencing and stuff like that.

24          THE COURT:  What I will do is the following:  I will

25  add at the end of that -- so where it says:  "A telephone that

1    will allow video conferencing with probation," I'll say:  "If

2    possible."

3         I don't want him to be in a situation where

4    technically, because you're not able to get a phone with video,

5    that technically that would be a violation.  But if it's if

6    possible and probation is in charge of getting the phone, I

7    think that will cover it.  So there won't be an issue of

8    Mr. Alvarez being technically in violation if he just has a

9    phone that would allow for oral communications.

10        THE NOTARY PUBLIC:  Your Honor, just to explain that a

11   little further, we implemented that due to COVID-19, we're not

12   allowed in-person contact, so just so we can physically see

13   him.  So as Officer Cooke addressed, we will make sure, if we

14   hold him to that, we'll get him a phone.

15        THE COURT:  Fantastic.  I wasn't at all saying that

16   the video conferencing wasn't something that wouldn't be

17   necessary in terms of being able to communicate with

18   Mr. Alvarez when you're not able to have personal visits.

19        I just want to make sure that if there's some

20   technological problem, even if it's for a short period of time

21   where you're not able to get a video conference phone, that's

22   something that wouldn't automatically trigger a violation.  But

23   absolutely probation should take whatever steps it needs to in

24   order to get the appropriate equipment.

25        Ms. Sanderson.

1              MS. SANDERSON:  May I speak to Mr. Alvarez briefly,

2      your Honor?

3              THE COURT:  Sure.  Yes.

4              (Defendant and counsel conferred)

5              THE COURT:  The only thing I would say, Ms. Sanderson,

6      is that the mikes are live.  If you could just turn them to the

7      side.

8              (Defendant and counsel conferred)

9              THE COURT:  Mr. Alvarez, I realize that you prefer to

10     do it in person.  But as you can see, in-person visits and

11     in-person activities are restricted at this time, and it's not

12     exactly clear what the future holds.

13             What I'm saying is that it's conceivable there will be

14     times when the probation officers cannot come to see you in

15     person, and there may also be times wherever you're staying may

16     not allow folks to come in for whatever reason.

17             In addition, it's just easier in terms of

18     communicating with you to utilize the phone.  So I understand

19     the objection and your objection to it, but I'm going to

20     overrule the objection and require the phone that will be

21     provided by the probation department so you won't have to spend

22     or try and find the money for any phone.

23             Ms. Sanderson.

24             MS. SANDERSON:  Thank you, Judge.

25             With regard to condition 5, I think there are two main

1   objections:  One, whether it's necessary at this point.  It's

2   been 30 years.  I don't see anything that was pointed out in

3   the submission as to his prison record that would at this point

4   indicate a deradicalization program is necessary.  I think the

5   other concern is just adding on too much conditions at this

6   point when we're trying to get him on his feet.

7               THE COURT:  In terms of this condition, I'm not in a

8   position -- and I don't think the attorneys are in a

9   position -- to make a determination one way or the other.

10              If in fact, once Mr. Alvarez is in the program, it's

11  determined that it's not necessary, then either, Ms. Sanderson,

12  you can make an application at that time or it will be

13  recommended that he no longer will need that.

14              I also think to the extent, again, that there is a

15  decision in mid August not to take medication, I think that

16  having a condition such as this only makes sense because I

17  understand that there may be an expectation that things won't

18  change from Mr. Alvarez perspective.  Things won't change if he

19  doesn't take the medication.

20              I don't know that necessarily to be the case.  So I'm

21  going to maintain that condition also with the understanding

22  and the understanding that whoever is running the program is to

23  make a determination as to whether or not they believe

24  Mr. Alvarez needs it and without prejudice to you to a future

25  application to have that condition removed.

1      MS. SANDERSON:  Thank you, your Honor.

2      With regard to search condition, Mr. Alvarez objects

3  to this.  He just informed me of that.

4      THE COURT:  It's a standard condition basically for

5  defendants who have certain types of charges, whether they're

6  narcotics related or otherwise.  And it really is a

7  prophylactic.  So I'm going to overrule the objection, and I

8  will impose condition number 6 also.

9      MS. SANDERSON:  Thank you, your Honor.

10      THE COURT:  Thank you.

11      Now let me ask:  You can assume, although this won't

12  hit the docket until later, that all of the conditions,

13  conditions 1 through 6 that are in the government's July 28

14  letter, that those conditions are a part of Mr. Alvarez's

15  supervised release and assume that they are in place.

16      In addition, as I mentioned, I'll add to condition 4

17  at the end the phrase "if possible."

18      Let me ask:  Is there anything else that we need to

19  take up today?  From the government?

20      MR. ROTHSCHILD:  Your Honor, if I might just have a

21  moment to confer with probation.

22      THE COURT:  Absolutely.

23      (Counsel conferred)

24      THE DEFENDANT:  Can I speak to the judge?

25      THE COURT:  Why don't you touch base with

1    Ms. Sanderson, and then I'll hear from you.

2            (Defendant and counsel conferred)

3            THE COURT:  Yes, Ms. Sanderson.

4            MS. SANDERSON:  Yes.  Thank you, your Honor.

5            Mr. Alvarez just wanted me to convey to the Court that

6    he strongly objects to any mental health treatment and that it

7    violates his rights and he wants to be free from any mental

8    health treatment.  So he does understand the conditions

9    contained therein, and he just wanted me to convey that to

10   your Honor.

11           (Continued on next page)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  Let me say this, Mr. Alvarez.  When you

2    were sentenced, there was three years of supervised release

3    that were imposed.  During that time period there are certain

4    terms of supervised release.  These are additional terms that

5    have been added to the terms of your supervised release in part

6    because your sentence was imposed a long time ago, and some of

7    these things were things that weren't included.

8          So, I understand you believe you don't need any mental

9    health treatment or to take medication, but these are going to

10   be the terms.  And, again, you if you make the decision --

11   although I hope that you don't -- to not abide by it, these are

12   the conditions that would be in place, unless they change, for

13   the three years that you are on supervised release.  It's not

14   unlike every defendant who has been incarcerated and a term of

15   supervised release is imposed; every defendant has conditions

16   of supervised release.  Some of them have mental health

17   treatment, some of them have drug treatment, some of them even

18   have medication.

19         So, I understand.  Ms. Sanderson has made clear your

20   objections to those, and if it turns out you decide not to

21   abide by any of the terms, then there may be a violation

22   proceeding; but if you abide by them, then there won't be.  But

23   I understand that you object to them and you think it's not

24   required and that you believe it violates your rights.

25         THE DEFENDANT:  I have told this attorney this.  Title

1   18 U.S.C., Section 2255 (1997).

2              THE COURT:  OK.  You're citing a case?  I think you

3   were citing cases.

4              THE DEFENDANT:  The case is Title 18 U.S.C., Section

5   1997.

6              THE COURT:  OK.

7              THE DEFENDANT:  Section 2255, 1997.

8              THE COURT:  All right.  Thank you, Mr. Alvarez.

9         Is there anything else, Mr. Rothschild?

10             MR. ROTHSCHILD:  Your Honor, I believe Probation has

11  one additional condition that they would like to submit for

12  your approval.

13             THE COURT:  Yes.

14             MR. NICHOLSON:  Yes, your Honor, the condition we

15  would like to add is the following:  You shall not possess,

16  view, access or otherwise use material that reflects extremist

17  or terroristic views, or is deemed to be inappropriate by the

18  U.S. Probation Office.

19             THE COURT:  OK.  Ms. Sanderson?

20             MS. SANDERSON:  Your Honor, we would object on grounds

21  of like overbreadth in this case, especially that last part.

22  It just gives Probation full discretion, and it's not going to

23  provide Mr. Alvarez with sufficient guidance as to what that

24  condition means.

25             THE COURT:  Let me hear -- is the idea -- I know that

1    that's a catch-all, but is the catch-all to catch things that

2    may not be -- well, I'm going to overrule that objection.

3          What I will say is the following:  If there are

4    specific instances where Probation makes a determination that

5    certain material is not appropriate, I am going to direct

6    that -- well, I think what should happen is when there is

7    material that is found, that probation either confiscates or

8    doesn't permit Mr. Alvarez access to, that I would ask that the

9    Probation Department inform me, or inform the Court as, well as

10   counsel, so that both the government and the defendant are

11   aware of exactly what we're talking about.  And, therefore, to

12   the extent there is an argument, Ms. Sanderson, in terms of

13   overbreadth and perhaps impingement on Mr. Alvarez's First

14   Amendment rights, you will have an opportunity at that point to

15   make a timely objection to them.

16          MS. SANDERSON:  Thank you, your Honor.

17          THE COURT:  OK.  What I would ask is if the Probation

18   Department could send me the language that was just read into

19   the record so that I can incorporate it in the terms of

20   supervised release, including what I just said, that Probation

21   is to inform if any material is confiscated or in any way taken

22   away from Mr. Alvarez, inform the court as well as the

23   government and defense counsel.  So, I will add that to that

24   term.

25          MR. NICHOLSON:  Yes, your Honor.

1          THE COURT:  All right, thank you.

2          Mr. Rothschild, anything else?

3          MR. ROTHSCHILD:  No, your Honor.  Thank you.

4          THE COURT:  Ms. Sanderson?

5          MS. SANDERSON:  No, your Honor.  Thank you.

6          THE COURT:  OK.  So, we will stand adjourned.

7          And, Mr. Alvarez, I wish you luck, and I hope that you

8     do abide by the terms of your release and that you're

9     successful going forward in your rehabilitation.  OK?  All

10    right.  Thank you everyone.  We stand adjourned.

11          (Adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25